UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SHELLEY C., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C18-5632JLR <br><br> ORDER AFFIRMING DENIAL OF BENEFITS |

## I. INTRODUCTION

Before the court is Plaintiff Shelley C.'s ("Plaintiff") complaint seeking review of the denial of her application for disability insurance benefits. (*See* Compl. (Dkt. # 1) at 1.) Plaintiff contends the Administrative Law Judge ("ALJ") erred by: (1) failing to properly consider the evidence in the context of Plaintiff's allegation of a closed period of disability; (2) failing to find Plaintiff's depression, anxiety, and carpal tunnel syndrome severe impairments at step two; (3) improperly evaluating the medical evidence; and (4) failing to properly conduct the step four analysis. (*See* Pl. Op. Br. (Dkt. # 12) at 1.) As discussed below, the court AFFIRMS the final decision of Defendant Commissioner of Social Security ("Commissioner") and DISMISSES the case with prejudice.

ORDER - 1

## II. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process, 20 C.F.R. § 404.1520, the ALJ found:

> **Step one:** Plaintiff did not engage in substantial gainful activity from February 3, 2014, through August 31, 2015, the period during which she alleges she was disabled. Plaintiff has engaged in substantial gainful activity since September 1, 2015. *See* 20 C.F.R §§ 404.1571-76.
>
> **Step two:** Plaintiff had the following severe impairments: Degenerative disc disease of the cervical and lumbar spine, and degenerative joint disease of the right knee. *See* 20 C.F.R. § 404.1520(c).
>
> **Step three:** Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.
>
> **Residual Functional Capacity ("RFC"):** Plaintiff could perform the full range of light work as defined in 20 C.F.R. § 404.1567(b).
>
> **Step four:** Plaintiff was capable of performing past relevant work as a telecommunications specialist. This work does not require the performance of work-related activities precluded by Plaintiff's RFC. *See* 20 C.F.R. § 404.1565.

(Admin. Record ("AR") (Dkt. # 7) at 15-24.) Based on these findings, the ALJ found that Plaintiff had not been under a disability, as defined by the Social Security Act, from February 3, 2014, through the date of the ALJ's decision. (*Id.* at 23.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (*See id.* at 1-3.)

## III. ANALYSIS

Plaintiff, as the claimant, bears the burden of proving that she is disabled within the meaning of the Social Security Act. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.

ORDER - 2

1999). Pursuant to 42 U.S.C. § 405(g), the court may set aside a denial of social security benefits only when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Although the court is required to examine the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### A. The ALJ Did Not Harmfully Err in Evaluating the Evidence in the Context of a Closed Period Disability Claim

Plaintiff contends the ALJ failed to properly analyze the evidence in the context of her closed period claim. (Pl. Op. Br. at 3-7.) The court disagrees.

The ALJ is not precluded from considering evidence outside of the alleged disability period. *See Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (noting that "it is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability"); *see also Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989) (noting that a medical report from before the disability period was relevant to the issue of whether the claimant's condition had worsened to the point of disability). This is particularly true where, as here, that evidence provides context to the claimant's allegations. As the ALJ noted—and the record demonstrates—Plaintiff had longstanding issues with back/neck pain, right knee pain, carpal tunnel syndrome, depression, and anxiety. (*See* AR at 20-21, 284 (noting right knee pain, and anxiety in

2013), 287 (noting right knee pain in 2013), 297 (noting cervical degenerative disc disease in 2012), 314 (noting carpal tunnel symptoms in 2012), 326 (same), 392 (noting cervical degenerative disc disease in 2005), 471 (reporting right carpal tunnel release surgery in October 2015), 475 (reporting left carpal tunnel release surgery in September 2015).) Plaintiff worked while she suffered from those conditions, both before and after the alleged disability period. (*See id.* at 21, 38-40.) In determining disability, the ALJ had to consider whether those conditions worsened to the point that Plaintiff could no longer work in February 2014. The ALJ could also consider whether Plaintiff's conditions improved when she went back to work in September 2015. If not, then it was certainly reasonable for the ALJ to conclude that Plaintiff's alleged disabilities did not prevent her from working.

Plaintiff's argument is simply a request for a different interpretation of the evidence. But the ALJ's decision was a rational interpretation of the evidence, and thus not subject to reversal. *See Thomas*, 278 F.3d at 954. The ALJ accordingly did not err in considering evidence outside the alleged disability period.

**B.    The ALJ Did Not Harmfully Err in Finding Plaintiff's Depression, Anxiety, and Carpal Tunnel Syndrome Not Severe at Step Two**

Plaintiff contends the ALJ harmfully erred in failing to find Plaintiff's depression, anxiety, and carpal tunnel syndrome to be severe impairments at step two. (Pl. Op. Br. at 11-13.) The court disagrees because any error was harmless.

The step-two inquiry is "merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen v.*

*Yuckert*, 482 U.S. 137, 146-47 (1987)); *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he step two inquiry is a *de minimis* screening device to dispose of groundless claims."). At step two, the ALJ must determine if the claimant suffers from any impairments that are "severe." 20 C.F.R. § 416.920(c). "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's work.'" *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290). As long as the claimant has at least one severe impairment, the disability inquiry moves on to step three. *See* 20 C.F.R. § 416.920(d).

The step-two inquiry "is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck*, 869 F.3d at 1048-49. At the RFC phase, the ALJ must consider the claimant's limitations from all impairments, including those that are not severe. *Id.* at 1049. "The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* (emphasis omitted).

The record contains evidence that Plaintiff suffered from depression, anxiety, and carpal tunnel syndrome during the alleged disability period, and that those impairments had at least some effect on Plaintiff's work. (*See* AR at 332, 339-40, 352, 440.) But any error in failing to find those impairments severe at step two was harmless. First, the ALJ found that Plaintiff suffered from at least one severe impairment, and thus continued the disability evaluation. (*Id.* at 17.) Second, the ALJ considered Plaintiff's limitations from

her depression, anxiety, and carpal tunnel syndrome at the RFC stage. (*Id.* at 20-21.) Consequently, any error in failing to classify Plaintiff's depression, anxiety, and carpal tunnel syndrome as severe impairments was inconsequential to the ultimate disability determination, and thus harmless. *See Buck*, 869 F.3d at 1049.

**C.  The ALJ Did Not Harmfully Err in Evaluating the Medical Evidence**

Plaintiff contends the ALJ erred in evaluating the medical evidence. (Pl. Op. Br. at 13-15.) In particular, Plaintiff contends the ALJ erred in rejecting the opinions of the state agency evaluators regarding her physical limitations; Derek Leinenbach, M.D., Scott Alvord, Psy.D., and Patricia Moran, M.D. (*Id.*) The court disagrees.

   1.  <u>The ALJ Did Not Harmfully Err in Rejecting the State Agency Evaluators' Opinions</u>

The state agency evaluators reviewed Plaintiff's medical records as part of the initial review and reconsideration of Plaintiff's disability claim. (*See* AR at 63-64, 78-81.) Norman Staley, M.D., who performed the reconsideration evaluation,[1] opined that Plaintiff had exertional, postural, manipulative and environmental limitations due to her carpal tunnel syndrome and cervical degenerative disc disease. (*Id.* at 79-80.)

The ALJ gave Dr. Staley's opinions little weight. (*Id.* at 22.) The ALJ reasoned

---

[1] Plaintiff references only the state agency evaluators' opinions that relate to her physical limitations. (*See* Pl. Op. Br. at 14.) The ALJ's discussion focused on Dr. Staley's opinions, which were similar to but slightly more restricting than the opinions of the initial evaluator, Nancy Camenzind. (*See* AR at 63-64, 78-81.) The record does not indicate whether Ms. Camenzind has any medical training or expertise. The ALJ's reasons for rejecting Dr. Staley's opinions apply with equal or greater force to Ms. Camenzind's opinions given her apparent lack of medical training. *See* 20 C.F.R. § 404.1502(a); *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

ORDER - 6

that Plaintiff returned to work three months after Dr. Staley's opinions, and Plaintiff's carpal tunnel symptoms resolved once she underwent surgery. (*Id.*) The ALJ further decided to give greater weight to examining physician Dr. Leinenbach. (*Id.*)

The ALJ did not err in rejecting Dr. Staley's opinions. First, the standard for rejecting the opinions of non-examining physicians is not well-defined, but in general an ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citations omitted). The ALJ met this standard in explaining her rejection of Dr. Staley's opinions. Dr. Staley essentially opined that Plaintiff could perform sedentary work. *See* AR at 79-80; 20 C.F.R. § 404.1567(a). Based on the vocational expert's testimony, the ALJ classified Plaintiff's past and current work as sedentary-to-medium work as performed. (*See* AR at 23.) There was thus some conflict between Dr. Staley's opinions and Plaintiff's ability to perform her current work, and the ALJ was entitled to resolve this conflict. *See Andrews*, 53 F.3d at 1039. The ALJ rationally resolved the conflict, and thus did not err. *See Thomas*, 278 F.3d at 954.

Second, the ALJ reasonably chose to accept Dr. Leinenbach's opinions over those of Dr. Staley. Generally, an ALJ should give greater weight to doctors who treat or examine a claimant than to those who do not. *See* 20 C.F.R. 404.1527(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."). Dr. Leinenbach's opinions conflicted with Dr. Staley's in that the former believed Plaintiff could satisfy the

light-work level lifting requirements, stand/walk and sit without limitation, and had no postural limitations. (*See* AR at 335.) Dr. Leinenbach actually examined Plaintiff, so the ALJ reasonably gave his opinions more weight. The ALJ thus did not err in rejecting the state agency evaluators' opinions.

2. <u>The ALJ Did Not Harmfully Err in Discounting Dr. Leinenbach's Opinions</u>

Dr. Leinenbach examined Plaintiff on January 3, 2015. (*See id.* at 332-36.) He opined that Plaintiff could stand, walk, and sit without limitation. (*Id.* at 335.) Dr. Leinenbach found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. (*Id.*) Dr. Leinenbach opined that Plaintiff had no postural or environmental limitations, but could reach, handle, finger, and feel frequently. (*Id.*)

The ALJ gave Dr. Leinenbach's opinions some weight. (*Id.* at 22.) The ALJ agreed with Dr. Leinenbach regarding Plaintiff's exertional limitations, but gave the manipulative limitations little weight because "[Plaintiff] began working [nine] months after the opinion without any apparent manipulative restrictions." (*Id.*)

The ALJ did not err in reaching this conclusion. An ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record" to reject the opinion of an examining doctor when it is contradicted. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews*, 53 F.3d at 1042). Much like the ALJ reasoned with respect to Dr. Staley's opinions, the ALJ rationally interpreted the evidence in finding that Plaintiff's return to work undermined Dr. Leinenbach's opinions regarding Plaintiff's manipulative limitations.

ORDER - 8

The Ninth Circuit's decision in *Moore v. Commissioner of Social Security Administration*, 278 F.3d 920 (9th Cir. 2002), accords with this result. In *Moore*, the Ninth Circuit held that "an applicant's employment that begins after the end of the period for which the applicant is seeking Social Security disability benefits . . . , unless wholly inconsistent with the claimed disability, is not a 'specific and legitimate' reason for rejecting the opinions of examining physicians contradicted only by a nonexamining physician." *Id.* at 922. The court held that the ALJ erred in relying on the claimant's work history after the end of the disability period because it was not wholly inconsistent with his allegations of disability. *Id.* at 925. In particular, the claimant had improved to the point where he was able to function in a job requiring minimal skills. *Id.*

Here, by contrast, the ALJ reasonably found that Plaintiff's return to her prior work with no apparent limitations was inconsistent with Dr. Leinenbach's opined functional restrictions. (*See* AR at 22.) This was a rational interpretation of the evidence, and the ALJ therefore did not err in discounting Dr. Leinenbach's opinions. *See Thomas*, 278 F.3d at 954.

3. The ALJ Did Not Harmfully Err in Rejecting Dr. Alvord's Opinions

Dr. Alvord examined Plaintiff on January 9, 2015. (*See* AR at 337-42.) Dr. Alvord opined that Plaintiff would have mild difficulty (a) completing detailed and complex tasks, (b) maintaining regular attendance, and (c) completing a normal work day and week without interruptions from her depression and anxiety. (*Id.* at 341.) Dr. Alvord opined that Plaintiff would not have difficulty (a) completing simple and repetitive tasks,

(b) accepting instructions from authority figures, (c) interacting with coworkers, supervisors, and the public, (d) performing work activities on a consistent basis without extra instruction, and (e) dealing with usual workplace stress. (*Id.*)

The ALJ gave Dr. Alvord's opinions little weight. (*Id.* at 22.) The ALJ noted that Plaintiff was looking for work at the time of Dr. Alvord's examination, and returned to work in August 2015, "showing sufficient motivation to work." (*Id.*) The ALJ further noted that "there is no evidence [Plaintiff] has had difficulties with attendance or performing complex tasks in her current work," and "no evidence she had greater symptoms during the period at issue than she has had since she started working." (*Id.*)

The ALJ did not harmfully err in reaching this conclusion. As with Dr. Leinenbach, the ALJ was required to give specific and legitimate reasons to reject Dr. Alvord's opinions. *See Lester*, 81 F.3d at 830-31. First, the ALJ again reasonably interpreted the evidence and determined that there was no distinction between Plaintiff's symptoms during and after the alleged disability period. (*See* AR at 22.)

Second, and perhaps more importantly, Plaintiff has not demonstrated what limitations Dr. Alvord's opinions suggest that would alter the RFC. Dr. Alvord opined that Plaintiff would have at most mild difficulty with certain work tasks. (*Id.* at 341.) Plaintiff has not identified any restrictions that should have been included based on mild impairments, and has consequently failed to show that the ALJ committed harmful error in rejecting Dr. Alvord's opinions. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)).

### 4. The ALJ Did Not Harmfully Err in Rejecting Dr. Moran's Opinions

Dr. Moran was one of Plaintiff's treating physicians. (*See* AR at 378-81, 442-45.) She issued an opinion in March 2015. (*Id.* at 378-81.) Dr. Moran opined that Plaintiff could stand/walk for less than two hours in an eight-hour work day, and sit for about two hours. (*Id.* at 378.) She opined that Plaintiff would need to be able to alternate between sitting and standing at will. (*Id.* at 379.) Dr. Moran opined that Plaintiff would need extra unscheduled rest breaks. *Id.* Dr. Moran also opined that Plaintiff had postural and lifting restrictions, and was only capable of tolerating a low stress job. (*Id.* at 380.) Dr. Moran opined that Plaintiff would be absent from work two days a month due to her symptoms. (*Id.* at 381.)

The ALJ gave Dr. Moran's opinions little weight. (*Id.* at 22.) The ALJ reasoned that the "[e]vidence does not support a need for extra breaks." (*Id.*) Dr. Moran provided no specific findings to support the limitations she described. (*Id.*) Moreover, Dr. Moran's opinions did not address or support a 12-month disability period because (a) she only started treating Plaintiff in January 2015, nine months before Plaintiff returned to work, and (b) Plaintiff returned to work about six months after Dr. Moran issued her opinion. (*Id.*)

The ALJ did not harmfully err in reaching this conclusion. The ALJ was required to give specific and legitimate reasons to reject Dr. Moran's opinions. *See Lester*, 81 F.3d at 830-31. First, an ALJ may reject a doctor's opinions if they are inadequately supported by the medical evidence. *See Bayliss*, 427 F.3d at 1216-17; *Thomas*, 278 F.3d

at 957; *see also* 20 C.F.R. § 404.1527(c)(3) (noting that one factor ALJs consider in weighing a medical opinion is the extent to which relevant evidence, including objective clinical findings, supports the opinion). The ALJ reasonably concluded that Dr. Moran's treatment notes and report did not adequately support or explain the scope of restrictions she imposed.

Second, the fact that Plaintiff returned to full-time work six months after Dr. Moran's opinions tends to contradict those opinions, particularly with respect to those restrictions that could render plaintiff unable to sustain competitive employment, such as the need for extra rest breaks or frequent absences. (*See* AR at 22, 54.)

The fact that Dr. Moran's treatment relationship only began nine months before the end of the closed disability period, however, was not a legitimate reason to discount her opinions. (*See id.* at 22.) The ALJ determined, without support, that Dr. Moran's opinions could not have described limitations lasting for a continuous 12-month period, as required to prove disability. *See* 42 U.S.C. § 1382c(a)(3)(A). Nothing in Dr. Moran's statement of her opinions indicated that they were only prospective, nor was that a reasonable assumption. (*See* AR at 378-81.)

Although the ALJ included an erroneous reason for rejecting Dr. Moran's opinions, Plaintiff has failed to show harmful error. *See Ludwig*, 681 F.3d at 1054. An error is harmless "where it is 'inconsequential to the ultimate disability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). The ALJ gave at least one valid

reason for rejecting Dr. Moran's opinions, so her inclusion of an erroneous reason was inconsequential to the disability determination, and therefore harmless.

**D.     The ALJ Did Not Harmfully Err in Conducting the Step Four Analysis**

Plaintiff contends the ALJ erred at step four by failing to properly categorize Plaintiff's past work and failing to incorporate all of Plaintiff's alleged limitations into the RFC. (*See* Pl. Op. Br. at 7-11.) The court disagrees.

Plaintiff argues that the ALJ erred because she incorrectly identified Plaintiff's past work as a telecommunications specialist. (*Id.* at 9-10.) The vocational expert identified this job as code 031.167-018 from the *Dictionary of Occupational Titles* ("DOT"), although the ALJ did not reference this number in her decision. (*See* AR at 17, 23, 53.) As Plaintiff notes, this DOT code is not accessible via Westlaw. But this DOT code can be located using SkillTran. (*See* Dkt. # 13-1.)

Plaintiff's argument is irrelevant to the outcome here. Although ALJs regularly rely on the DOT, an ALJ may deviate from the DOT by relying on expert testimony, as long as the record contains persuasive evidence to support the deviation. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)). The ALJ relied on testimony from a vocational expert, who noted that Plaintiff's work as performed differed from the DOT classification based on Plaintiff's work history. (*See* AR at 53.) Thus, even if the ALJ had used the wrong DOT code, she relied on the vocational expert's testimony, which supported the outcome here. (*See id.*) Plaintiff has failed to show that the ALJ unreasonably interpreted the evidence

or committed a harmful error.  *See Ludwig*, 681 F.3d at 1054.

Plaintiff further argues that the ALJ erred because her categorization of Plaintiff's past work and step four determination differed from the determinations made during the initial review and reconsideration of Plaintiff's application.  (Pl. Op. Br. at 9.)  But an ALJ is not bound by the earlier decisions made in reviewing a claimant's application.  *See Battles El v. Berryhill*, No. C17-1383-MAT, 2018 WL 1517660, at *2 (W.D. Wash. Mar. 28, 2018); 20 C.F.R. §§ 404.946(a), 404.1513a(b).  The ALJ did not err in reaching a different conclusion regarding Plaintiff's past work and step four.

Plaintiff's final argument—that the ALJ erred because she failed to incorporate all of Plaintiff's alleged limitations—also fails.  The ALJ was not required to include limitations in the RFC that were not established by the evidence.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).  Because the court found that the ALJ did not err in weighing the evidence, the ALJ did not have to incorporate limitations from that evidence into the RFC, and thus Plaintiff has failed to show harmful error.  *See id.*

## CONCLUSION

For the foregoing reasons, the court AFFIRMS the Commissioner's final decision and DISMISSES this case with prejudice.

DATED this 22nd day of March, 2019.

JAMES L. ROBART
United States District Judge

ORDER - 14